### 19384

MARSH PLYWOOD CORPORATION, Respondent, v. SOUTH CAROLINA STATE HIGHWAY DEPARTMENT and Satterfield Construction Company, of whom Satterfield Construction Company is, Appellant.

(187 S. E. (2d) 515)

120

*Thurmond Bishop, Esq.,* of *Mays & Bishop,* Greenwood, *for Appellant,*

*T. Kenneth Summerford, Esq.,* of *Summerford & Porter,* Florence, *for Respondent,*

March 8, 1972.

BUSSEY, Justice:

In this action respondent Marsh Plywood Corporation sought to recover from the appellant Satterfield Construction Company the value of certain timber which it allegedly

was prevented from harvesting before the expiration of a timber deed as a result of negligence on the part of Satterfield. Upon trial, Marsh obtained a verdict of $3,300.00, and Satterfield appeals from the denial of its motion for judgment *n. o. v.,* or in the alternative, for a new trial.

The following facts are either stipulated or undisputed. Marsh, under a timber deed dated September 20, 1962, acquired from one Dargan, for a consideration of $18,000.00, certain marked timber on a one hundred sixty-eight acre tract of land in or adjacent to Black River Swamp. Such timber, at the instance of Dargan, was marked and cruised by one Jeffords, whose cruise was apparently relied upon by Marsh in making the purchase. The timber deed was for a period of thirty-six months, commencing with the date of cutting operations. Marsh commenced operations some time shortly after September 20, 1962, and continued cutting until January or February 1963, at which time it had cut and removed 427,194 board feet of timber.

Satterfield began construction of a section of Highway I-95 through Black River Swamp in March of 1965, thereby affecting the land on which Marsh had timber rights.

On or about September 20, 1965, three years after the execution of the timber deed, the fair market value of swamp hardwood, the type of timber Marsh had an interest in, was $35.48 per thousand board feet. It is undisputed that Marsh still had some uncut timber on the aforesaid tract of land when its timber deed expired. The timber tract was upstream from a fill being constructed by Satterfield, which fill caused water to back up on the tract of timber to such an extent that it was impossible for Marsh to remove the remainder of its timber prior to September 20, 1965. Marsh timely sought, unsuccessfully, to obtain an alleviation of the situation by Satterfield. A berm ditch along the northern side of Highway I-95, called for in the Highway Department's specifications, would, inferentially, have alleviated the condition, but such was not constructed

until some time in the year 1966. Quite appropriately, the entire transcript of the trial is not contained in the record, the foregoing facts being either stipulated or gleaned from excerpts from the the testimony of key witnesses.

Since Marsh's timber deed expired three years from the date of the commencement of the cutting operations, rather than three years from the date of its execution, Satterfield contends that it was entitled to judgment *n. o. v.* for the failure of Marsh to prove that the condition created by Satterfield's negligence existed during the entire remainder of the period that Marsh's timber deed was in full force and effect. The precise date of the commencement of the cutting operation is not established by the evidence, but inferentially, cutting operations commenced approximately one month after the execution of the timber deed, with the result that such would not have expired until approximately one month subsequent to September 20, 1965. There is also evidence to the effect that the remaining uncut timber could have been removed in approximately one month's time of satisfactory logging conditions.

The evidence and all reasonable inferences therefrom have to be viewed in the light most favorable to Marsh. Viewing all of the evidence in such light, we conclude that it is clearly inferable that the condition created by Satterfield existed to and beyond the date of the expiration of Marsh's timber deed, whatever the date. Satterfield's contention in this regard is, we think, without merit.

Satterfield also contends that it is entitled to judgment *n. o. v.,* or, in the alternative, to a new trial, on the ground that Marsh failed to prove by competent evidence the value of the remainder of its uncut timber. Jeffords, who marked and cruised the timber upon the sale from Dargan to Marsh, was not called as a witness and the record does not reflect whether or not he was available. The actual cruise made by him was apparently not

offered in evidence, nor was there offered by Marsh any cruise of the remaining uncut timber involved. Boatwright, an employee of Marsh, was allowed, without objection, to testify, obviously based on the Jeffords cruise, as to the respective numbers of the various species of marked trees purchased from Dargan, and that the total number of trees was 3,512.

Somewhat later in the testimony of Boatwright, he was allowed, over objection, to testify that Jeffords' cruise showed total board feet of 559,890 feet, and that by subtracting therefrom what had actually been cut, there remained uncut 132,636 feet. Such was the only evidence offered by Marsh tending to prove anything like the exact amount of uncut timber. Satterfield contends, and we agree, that such evidence was hearsay and should have been excluded. Whether upon laying a proper foundation the cruise report of Jeffords would itself have been admissible is a question not presently involved. While we conclude that there was error, we are unconvinced that there was any prejudice to Satterfield. The testimony of Boatwright which should have been excluded was, we think, clearly confirmed by the testimony of a forester offered as a witness on behalf of Satterfield.

The case was tried on October 20, 1970. On the previous day, Boris Hurlbutt, a professional forester, did a "ten per cent sample cruise" of the area at the behest of Satterfield; incidentally, over eight years after the trees were marked. According to the testimony of Mr. Hurlbutt, as we understand it, a ten per cent sample cruise is accomplished substantially in the following manner. Parallel compass lines are run through an area ten chains, or six hundred sixty feet apart. Along each of these lines the marked trees in a plot, one chain in width, are counted and then the total of the trees found in all of such plots is multiplied by ten to arrive at the total number of trees on the tract. In doing his ten per cent sample cruise, Mr. Hurlbutt found 83 marked

trees, thus indicating a total of approximately 830 marked uncut trees on the tract.

The total number of trees shown by the Jeffords cruise was testified to, without objection, as being 3,512. According to Jeffords' calculation of the total board feet, the average board feet per tree would have been 159. While the testimony as to the total number of board feet, as disclosed by the Jeffords cruise, should have been excluded, there is no suggestion or contention that the average of 159 board feet per tree is inaccurate. In fact, the testimony of Hurlbutt as to the size of the marked trees found by him would, inferentially, confirm, we think, an average of 159 or more board feet per tree. When we multiply 159 by 830, the number of trees indicated by the Hurlbutt cruise, the product is 131,970 board feet, which is very nearly identical with the remaining total calculated by Boatwright in his testimony which was objected to. In round figures, the testimony of both Boatwright and Hurlbutt would indicate the extent of the remaining uncut timber to be 132,000 feet, and applying to such figure the stipulated price per thousand, the value of the uncut timber would be $4,638.36.

Calculated another way, 830 trees remaining would be 23.6% of the total of 3,512 trees purchased by Marsh, for which Marsh paid $18,000.00; 23.6% of the purchase price calculates to $4,248.00.

In the light of the foregoing calculations it is clear that the verdict for the value of the uncut timber in the amount of $3,300.00 was more than amply supported by the testimony of Satterfield's cruiser, Hurlbutt. It follows that Satterfield has failed to demonstrate any prejudice resulting from the admission of hearsay evidence. The judgment below is, accordingly,

Affirmed.

Moss, C. J., and Lewis, Brailsford and Littlejohn, JJ., concur.