486 S.E.2d 750

**J. Wrightson JACKSON and Sallie T. Jackson, Respondents,**

**v.**

**Robert W. SPEED, Kelley J. Broome, William A. Broome, Columbia Sports Car Garage, Inc., and Western Surety Company, Defendants,**

**of whom Kelley J. Broome, William A. Broome, and Columbia Sports Car Garage, Inc., are Appellants.**

No. 24639.

Supreme Court of South Carolina.

Heard April 1, 1997.

Decided June 23, 1997.

---

Carol S. Broome, of Broome & Broome, Columbia, for appellants.

J. Gregory Studemeyer, Columbia, for respondents.

BURNETT, Justice:

This dispute arose over a transaction involving a 1969 Jaguar automobile and the alleged representations made to respondents on the condition of the vehicle. Appellants appealed the jury verdict in favor of respondents and the trial judge's award of attorney's fees. We affirm.

## FACTS

Respondents (Mr. and Mrs. Jackson) initiated this action against all defendants alleging fraud, revocation of acceptance,[1] and violation of the Regulation of Manufacturers, Distributors, and Dealers Act, S.C.Code Ann. §§ 56–15–10 to –130 (1991) (Dealers Act). Respondents effectively served all

---

1. This cause of action was dropped prior to charging the jury.

defendants except Robert W. Speed, thus Speed did not appear at the trial.[2]

Appellant William A. Broome (Broome) owns Columbia Sports Car Garage (CSCG) which is located in Columbia, South Carolina.[3] CSCG specializes in service, parts, restoration and sales of European sports cars. Appellant Kelley Broome (Kelley) is Broome's son. At the time of the transaction with Mr. and Mrs. Jackson, Kelley was training at CSCG as a line mechanic and Robert Speed was a commissioned-based salesman for Broome.

In April 1992, Mr. and Mrs. Jackson, who were residents of the Atlanta, Georgia area, were in the market for an older model European sports car in good condition. Mr. Jackson responded to an advertisement placed in an Atlanta newspaper by Speed. This advertisement had been authorized and paid for by Broome. Mr. Jackson called CSCG and spoke with Speed. During the conversation, Speed represented the Jaguar was in excellent condition and the vehicle had never been wrecked. Mr. Jackson arranged to inspect the vehicle on Sunday, April 26, 1992.

When Mr. and Mrs. Jackson arrived at CSCG on April 26, 1992, Speed and Kelley were present. The Jaguar was partially disassembled and could not be driven. Both Speed and Kelley represented the vehicle had only 87,000 original miles and had never been wrecked. Kelley also represented after a complete interior/exterior restoration the Jaguar would be like a new vehicle. Further, Kelley told Mr. and Mrs. Jackson the engine did not need to be rebuilt and it still met factory specifications. After receiving assurances the Jaguar would be in good condition after restoration was completed, Mr. and Mrs. Jackson agreed to buy the vehicle for $20,000.00. Speed and Mr. Jackson prepared a contract. The contract contained a list of specific items that were to be repaired during the restoration. The next day, Broome and Mr. Jackson discussed the deal by telephone. Broome confirmed the restora-

---

2. Prior to submitting the case to the jury, the trial judge stated Speed was not a party and his name should not be included on the verdict forms. However, due to a clerical mistake, his name was added as a party-defendant on the judgment.

3. After 1990, CSCG's status as a corporation was dissolved.

tion of the Jaguar would be completed pursuant to the list prepared by Mr. Jackson. Broome also provided Mr. and Mrs. Jackson documents reflecting clear and unencumbered title to the vehicle. Included in these documents was information the represented 87,000 miles were not the actual miles.

In May 1992, Broome contacted Mr. and Mrs. Jackson to make arrangements to deliver the Jaguar. Broome represented restoration was complete. Mr. and Mrs. Jackson asked Broome to deliver the vehicle between 1:00 and 1:30 p.m. so they could test drive the vehicle before rush hour and before the bank closed at 4:00 p.m. Broome had requested the balance of the purchase price in cash because he might purchase other vehicles on his return home.

On the date of delivery, Broome and Kelley arrived at Mr. and Mrs. Jackson's residence at 3:25 p.m. with the vehicle on a trailer. Because of increased traffic, Mr. and Mrs. Jackson were uncomfortable taking the vehicle for a test drive. However, Mrs. Jackson immediately took Broome to the bank in an effort to accommodate his request for payment in cash. The vehicle remained on the trailer and Broome kept the key to the Jaguar.

After Broome received the cash payment, he gave Mrs. Jackson an Affidavit of Sale indicating the odometer reading exceeded its mechanical limits. When Mrs. Jackson questioned Broome about the mileage, he assured her the 87,000 miles reflected on the odometer were the actual miles. Mrs. Jackson then signed the Affidavit of Sale.

After returning from the bank, Kelley removed the vehicle from the trailer. Kelley indicated the Jaguar needed gas and asked if either Mr. or Mrs. Jackson would like to go for a ride. Mrs. Jackson agreed to go; however, because of increased traffic, she did not want to drive. During the drive, Mrs. Jackson noticed the oil pressure gauge had a low reading. Kelley explained the reading was low because they were doing a lot of "stop and go" driving but the oil pressure reading would increase on an open highway. Mrs. Jackson also questioned Kelley about the high friction point on the clutch. Kelley responded the friction point was normal for this particular Jaguar and could not be adjusted. When Mrs. Jackson attempted to open the passenger door at the gas station, the

door would not open. Kelley told Mrs. Jackson the door had new weatherstripping and it would work better after use. Finally, because Mrs. Jackson noticed Kelley pulling on the emergency brake, she asked Kelley if something was wrong with the brakes. Kelley responded the emergency brake was new and would work itself out with use. Broome and Kelley departed soon after Kelley and Mrs. Jackson returned from the drive.

After traffic lessened, Mr. and Mrs. Jackson test drove the Jaguar. During the ride, Mr. Jackson noticed the oil pressure was dropping. After driving further, the brakes locked on the vehicle and would not release for several minutes. After the brakes released, Mr. and Mrs. Jackson drove a short distance further and the brakes locked again. Mr. Jackson then began driving very slowly and used the gear box and emergency brake to return to his residence.

The next day Mr. Jackson called Broome at CSCG. Broome agreed he would retrieve the vehicle and make the repairs. However, Mr. and Mrs. Jackson refused to allow Broome to take the vehicle and also keep the $20,000.00. Instead, Mr. Jackson asked Broome to refund the purchase price, make the repairs as promised, and when the vehicle was repaired, they could renegotiate the arrangement. Broome refused to refund the purchase money.

A series of letters passed between Mr. and Mrs. Jackson and Broome. Mr. and Mrs. Jackson had the vehicle professionally analyzed by Car Checkers of America and by Jaguar Motor Works. These inspections confirmed the vehicle had not been repaired as required by the list, and resulted in the discovery of further defects, including that the vehicle had been wrecked. Because Broome continued to refuse to refund their money, Mr. and Mrs. Jackson brought suit.

A jury trial was held from May 9–12, 1994. At trial, Mr. and Mrs. Jackson testified about the transaction and the condition of the vehicle. Further, the previous owner of the Jaguar, Eddie Bristow, testified the vehicle had been wrecked and the mileage on the vehicle's odometer was incorrect. Bristow further testified when he took the vehicle to CSCG, Broome and Kelley immediately recognized the vehicle had been wrecked and brought this fact to Bristow's attention.

Bristow subsequently sold this vehicle to CSCG. Bristow disclosed the mileage discrepancy and received a trade-in allowance of $6,700.00. Broome and Kelley testified for the defense. However, due to illness, Broome was not available for cross-examination and the parties agreed to substitute Broome's deposition in lieu of live testimony. Broome returned to the courtroom prior to closing arguments. None of the parties sought to recall Broome as a witness.

At the conclusion of the trial, the jury returned a verdict in favor of Mr. and Mrs. Jackson on the Dealers Act cause of action. The jury awarded Mr. and Mrs. Jackson $13,300.00 in actual damages which was doubled to $26,600.00 under the Dealers Act and punitive damages of $39,900.00. After the verdict, the trial judge gave Mr. and Mrs. Jackson five days to gather documentation concerning the amount of attorney's fees which should be awarded. Mr. and Mrs. Jackson filed their motion for attorney's fees and costs on May 17, 1994. A copy of this motion, including itemized statements of costs and fees, was served on appellants' attorney, Thomas Broadwater.

Both Broome and Kelley filed *pro se* notices of appeal in June 1994. In July 1994, Broome filed a *pro se* motion for a continuance of the hearing to set the attorney's fees. However, that motion indicated Mr. Broadwater was still Broome's attorney of record and had not yet been relieved. Broome's motion was granted.

Following this continuance, Mr. and Mrs. Jackson attempted to reschedule the hearing and indicated willingness to travel to Anderson in order to settle the matter. However, purported counsel for Kelley, Carol Broome (Mrs. Broome),[4] indicated she was unwilling to travel to Anderson but would attend a hearing held in Richland, Lexington or Kershaw Counties. Several attempts were made to conduct this hearing; however, each set date conflicted with another appointment of Mrs. Broome. Finally, on February 1, 1995, the trial judge scheduled a hearing for February 8, 1995, at 2:15 p.m. Mrs. Broome received notice by telephone and by mail on February 1 and 2, 1995. Notice was sent by certified mail and

4. No substitution of counsel had been filed prior to the February 8, 1995, hearing on attorney's fees and costs.

first class mail to Kelley, Broome, CSCG, Mr. Broadwater, and Mrs. Broome.

On the day of the hearing, the trial judge received a note indicating Mrs. Broome was ill and unable to attend. Mr. and Mrs. Jackson's counsel and his witness were present at the time set for the hearing. Mrs. Broome's law partner, John Broome (Mr. Broome), and Broome also were present. Mr. Broome claimed he only appeared to ensure the trial judge was aware of Mrs. Broome's illness and to request a continuance. While Mr. Broome argued for a continuance, it became apparent to the trial judge that Mr. Broome was familiar with the issues and could competently handle this matter. Mr. Broome also requested a continuance because Broome's attorney, Mr. Broadwater, was absent. However, once Mr. Broadwater appeared, Broome objected to proceeding, arguing Mr. Broadwater was no longer his attorney. Mr. Broome further claimed the appellants did not receive adequate notice of the hearing; therefore, the matter should be continued. The trial judge denied appellants' request for a continuance on all grounds and proceeded to determine the costs and attorney's fees.

## ISSUES

### A. Trial

I. Did the trial judge err in including Kelley Broome as a defendant on the jury verdict form for the Dealers Act cause of action?

II. Did the trial judge err in failing to grant judgment not withstanding the verdict?

III. Did the cumulative effect of hearsay testimony deny the appellants their right to a fair trial and due process?

IV. Did the trial judge err in failing to grant a mistrial?

V. Did the trial judge abuse his discretion in conducting this trial?

### B. Attorney's Fees Hearing

I. Did the trial judge abuse his discretion in awarding attorney's fees in an amount that exceeded the contractual amount agreed upon by Mr. and Mrs. Jackson and their

counsel and in failing to state facts in the order to support each factor under the reasonableness test?

II. Did the trial judge abuse his discretion in refusing to grant a continuance where appellants' attorney was unable to attend due to illness?

III. Did the trial judge abuse his discretion in refusing to grant a continuance where all the appellants did not receive adequate notice of the hearing?

IV. Did the trial judge abuse his discretion in refusing to strike the motion for attorney's fees because the motion did not comply with Rule 11, SCRCP?

V. Does Rule 204, SCACR, prevent the trial judge from determining attorney's fees?

VI. Did the trial judge err in awarding costs because he failed to make any findings of fact to support the award?

## DISCUSSION

### A. Trial

#### I. Kelley's Liability under Dealers Act

■ Kelley claims the trial judge erred in including him as a defendant to the Dealers Act cause of action on the jury verdict form because he was not subject to liability under the Dealers Act. Specifically, Kelley contends Mr. and Mrs. Jackson did not allege in their complaint or prove at trial he was a dealer or a person in control under the Dealers Act. We disagree.

■ When interpreting a statute, words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Rowe v. Hyatt*, 321 S.C. 366, 468 S.E.2d 649 (1996). Under the Dealers Act, "*any person* who sells or attempts to effect the sale of any motor vehicle" is a dealer. S.C.Code Ann. § 56–15–10(h) (1991) (emphasis added). "Person" is defined as:

[A] natural person, corporation, partnership, trust or other entity, and, in case of an entity, it shall include any other entity in which it has a majority interest or effectively controls as well as the individual officers, directors and

other persons in active control of the activities of each such entity.

S.C.Code Ann. § 56–15–10(n) (1991). To be liable, the dealer must participate in the wrongdoing. *Rowe v. Hyatt, supra* (dealer must personally commit, direct, or authorize the inappropriate acts); S.C.Code Ann. § 56–15–40 (1991) (unlawful for a "motor vehicle dealer to engage in any action which is arbitrary, in bad faith, or unconscionable . . .").

■ An agent for an entity who makes misrepresentations while attempting to sell a motor vehicle qualifies as a dealer who may be held liable under this act. By using the word *any* in § 56–15–10(h), this definition contemplates including all "persons" who were involved in the transaction. Further, the controlling person language in § 56–15–10(n) allows an injured party to disregard the entity when the controlling person of the entity actively participates in the unlawful act. However, this language does not eliminate an agent's liability to a third party for his own actions. *See Gilbert v. Mid–South Machinery Co.*, 267 S.C. 211, 227 S.E.2d 189 (1976); 3 Am.Jur.2d, *Agency* § 309 (1986) (under common law, agents of an entity who deal directly with a third party owe that party a duty not to injure the party with his actions and may be held liable for violating that duty). If the Legislature intended agents to escape liability under this act, it could have done so. Thus, under the Dealers Act, an agent for an entity who sells or attempts to sell a motor vehicle, along with the entity, may be held liable for any misrepresentations made during the transaction. To hold otherwise would allow the person most responsible for the unlawful conduct to escape liability.

Although Mr. and Mrs. Jackson did not allege Kelley was a dealer in their complaint, there was evidence presented at trial to prove Kelley was a dealer. Evidence at trial demonstrated that Kelley assisted Speed in showing the vehicle to them. Mr. and Mrs. Jackson and Kelley made several representations about the vehicle during the Jacksons' inspection, including the vehicle had not been wrecked, the mileage was actually 87,000, the engine still met factory specifications, and after restoration, the vehicle would be in excellent condition. Further, during the delivery of the Jaguar to the Jacksons, Kelley assured Mrs. Jackson the vehicle was in good shape and dismissed her concerns over the appearance of certain prob-

lems during their drive to and from the gas station. Based on this evidence, a jury could reasonably conclude Kelley was a "person", as contemplated by the Dealers Act. He was attempting to effect the sale of the Jaguar, and therefore, was a dealer who could be held liable for his misrepresentations under this act.

■ Kelley further contends he did not receive notice of this cause of action; therefore, the court lacked jurisdiction over him on this cause of action and the judgment is void under Rule 60(b), SCRCP. We disagree.

Under Rule 60(b), SCRCP, a judgment is void if the court that rendered it lacked jurisdiction over the parties. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 11 *Federal Practice and Procedure* § 2862 (2d ed.1995). However, a defendant may waive objections to insufficiency of service and voluntarily subject himself to personal jurisdiction. *Hospital Mortgage Group, Inc. v. Parque Insdus. Rio Canas, Inc.,* 653 F.2d 54 (1st Cir.1981). Further, the Due Process Clause only demands "notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950).

■ Under the facts of this case, Kelley received adequate notice and had an opportunity to defend under this cause of action. Kelley was properly served with a summons and complaint setting out the three causes of action. While the complaint does not specifically allege Kelley is a "dealer" under the Dealers Act, the allegations in the complaint are sufficient to put Kelley on notice that he could be found to be a dealer under the Dealers Act. In the prayer for relief, Mr. and Mrs. Jackson ask for relief against all defendants. Under the Dealers Act claim, the Jacksons incorporate the allegations of the other causes of action. Under the first cause of action, Mr. and Mrs. Jackson allege Kelley is an employee of CSCG, and they allege certain representations about the condition of the vehicle were made. These same representations were used to show liability under the Dealers Act. Further, the defense of this lawsuit was the same for all defendants on all the claims—deny any wrongdoing and deny

making any representations. Kelley fails to show how his defense of the lawsuit would have been altered had the third cause of action specifically alleged Kelley was a dealer. Thus, Kelley suffered no prejudice. Further, Kelley failed to object to having his name included on the verdict form, therefore, waiving any objections to the adequacy of notice.

## II. JNOV

■ Appellants claim the trial judge erred when he failed to grant their motion for judgment notwithstanding the verdict. We disagree.

■ When ruling on directed verdict and JNOV motions, the evidence must be viewed in the light most favorable to the non-moving party. *Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993); Rule 50, SCRCP.

Under the Dealers Act, the plaintiff must prove the dealer acted arbitrarily, in bad faith, or unconscionably. S.C.Code Ann. § 56–15–40 (1991). In order for a dealer to incur personal liability, the dealer must actually participate in the complained behavior. *Rowe v. Hyatt, supra.* Here, the evidence showed while attempting to sell the vehicle, Kelley made multiple misrepresentations about the condition of the vehicle; Broome ratified the deal made by Speed and Kelley and was directly involved in the final transaction; CSCG sold the vehicle and Broome and Kelley directly participated in the sale of this vehicle, thus they are "dealers"; and by selling Mr. and Mrs. Jackson a previously wrecked vehicle and by failing to repair the vehicle as agreed to in the contract, Broome, Kelley and CSCG acted arbitrarily, in bad faith or unconscionably. Thus, the jury could have reasonably found Broome, Kelley and CSCG violated the Dealers Act.

## III. Hearsay Evidence

■ Appellants claim testimony by Mr. Jackson concerning statements made by Speed about the condition of the vehicle during its inspection on April 26, 1992, were hearsay and should not have been admitted. We disagree.

■ Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Player v.*

*Thompson,* 259 S.C. 600, 193 S.E.2d 531 (1972). The improper admission of hearsay is reversible error only when the admission causes prejudice. *State v. Craig,* 267 S.C. 262, 227 S.E.2d 306 (1976). Where the hearsay is merely cumulative to other evidence, its admission is harmless. *Marsh Plywood Corp. v. S.C. Highway Dept.,* 258 S.C. 119, 187 S.E.2d 515 (1972); *State v. Williams,* 285 S.C. 544, 331 S.E.2d 354 (Ct.App.1985).

First, appellants have failed to show prejudice because of the admission of these statements. Statements by Speed had already been admitted prior to the objection. The unobjected to testimony established Speed had told Mr. Jackson the vehicle was in pristine condition and had never been wrecked. Therefore, any statements made by Speed on April 26 about the condition of the vehicle were merely cumulative. Other testimony admitted without objection established Kelley and Broome also stated the actual miles on the vehicle were 87,000. Therefore, Speed's statement about the mileage was cumulative. Further, overwhelming evidence admitted without objection established the vehicle was not restored as required by the list and this evidence served as an adequate basis for the jury to find appellants violated the Dealers Act.

■ Further, as an agent for Broome and CSCG, Speed's statements were admissible as admissions of a party-opponent. *See Marshall v. Thomason,* 241 S.C. 84, 127 S.E.2d 177 (1962); Danny R. Collins, *South Carolina Evidence* 382–84 (1995). As a car salesman for CSCG and Broome, Speed was an agent authorized to speak for them about this vehicle. Thus, any statements made by him about the vehicle during the transaction were admissible.

■ Appellants also objected to the admission of the document signed by Mr. Jackson and Speed on April 26, 1992. At trial, appellants claimed the document should not be admitted because it was not notarized. However, on appeal, they contend the document was hearsay. Because this ground was not raised below, this issue is not preserved for review. *State v. Whipple,* 324 S.C. 43, 476 S.E.2d 683 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 618, 136 L.Ed.2d 541 (a party may not argue one ground at trial and an alternate ground on appeal).

## IV. Mistrial

Appellants claim the trial judge erred in refusing to grant a mistrial after Mr. and Mrs. Jackson's counsel asked an inappropriate question. We disagree.

Appellants objected immediately to this question, and the trial judge sustained the objection. The trial judge then proceeded to instruct the jury to disregard the previous question. Appellants then moved for a mistrial. The trial judge denied this motion finding his admonishment to the jury to disregard this question was sufficient.

The question of whether to grant a motion for a mistrial rests within the trial judge's discretion and his ruling should not be disturbed on appeal unless he abused his discretion. *Tucker v. Reynolds,* 268 S.C. 330, 233 S.E.2d 402 (1977).

Here, the trial judge did not abuse his discretion in denying appellants' motion for a mistrial. The curative instruction given was sufficient to cure any possible prejudice. Further, appellants have failed to show prejudice as a result of this statement.

## V. Discretion of Trial Judge

Appellants contend the trial judge abused his discretion in his conduct of the trial, and therefore, this Court should adopt the "plain error" rule in order to ensure justice is done. We disagree.

The trial judge did not abuse his discretion in his conduct of the trial. *See S.C. Dept. of Highways and Public Transportation v. Galbreath,* 315 S.C. 82, 431 S.E.2d 625 (Ct.App.1993) (the conduct of the trial is within the trial judge's discretion, and the exercise of this discretion will not be disturbed on appeal absent an abuse of discretion). This Court has consistently refused to apply the plain error rule. *State v. Vanderbilt,* 287 S.C. 597, 340 S.E.2d 543 (1986); *Young v. Smith,* 168 S.C. 362, 167 S.E. 669 (1933). Instead, it is the responsibility of trial counsel to preserve issues for appellate review. Only limited exceptions to this rule have been recognized. *Toyota of Florence, Inc. v. Lynch,* 314 S.C. 257, 442 S.E.2d 611 (1994) (appellate court has authority to

review flagrant errors); *South Carolina State Highway Department v. Nasim,* 255 S.C. 406, 179 S.E.2d 211 (1971) (argument was highly prejudicial). The errors in this case do not rise to that level of error; therefore, in order to preserve these errors for review, a contemporaneous objection should have been made.

Appellants' remaining trial issues are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Issue 2: *McGee v. Bruce Hosp. System,* 321 S.C. 340, 468 S.E.2d 633 (1996) (an issue may not be raised for the first time on appeal but must have been raised to the trial judge to be preserved for appellate review); Issue 3: *State v. Whipple, supra* (a party may not argue one ground at trial and an alternate ground on appeal); Issue 4: Rule 51, SCRCP (party may not complain about instructions on appeal unless objected to at trial); *Greenville Memorial Auditorium v. Martin,* 301 S.C. 242, 391 S.E.2d 546 (1990) (this Court will not review the failure to give a requested jury charge where the request to charge does not appear on the record); Issue 5: *State v. Craig, supra* (failure to object to the sufficiency of a trial judge's curative instruction and a failure to request additional instructions precludes appellate review of the curative instruction); *Mendelsohn v. Whitfield,* 312 S.C. 17, 430 S.E.2d 524 (Ct.App.1993) (a party who does not object to the admission of evidence when it is offered cannot make its admission a ground for appeal).

## B. Attorney's Fees Hearing

### I. Reasonableness of Fee

■ Appellants argue the hourly rate agreed to by Mr. and Mrs. Jackson and their counsel controls the determination of reasonable hourly rate. Further, they claim the trial judge failed to state facts in his order to support the factors used to determine reasonable attorney's fees. We disagree.

■ Attorney's fees are not recoverable unless authorized by contract or statute. *Blumberg v. Nealco, Inc.,* 310 S.C. 492, 427 S.E.2d 659 (1993). The Dealers Act mandates the recovery of costs, including attorney's fees. S.C.Code Ann. § 56–15–110 (1976). The award of attorney's fees is made to the party, not his lawyer. *Prevatte v. Asbury Arms,*

302 S.C. 413, 396 S.E.2d 642 (Ct.App.1990). When determining the reasonableness of attorney's fees under a statute mandating the award of attorney fees, the contract between the client and his counsel does not control the determination of a reasonable hourly rate. *See Rice v. Multimedia, Inc.,* 318 S.C. 95, 456 S.E.2d 381 (1995) (this Court affirmed a trial court's award of an amount greater than that due the plaintiffs attorney under a contingency fee contract); *Columbia (S.C.) Teachers Federal Credit Union v. Newsome,* 303 S.C. 162, 399 S.E.2d 444 (Ct.App.1990) (affirming an award of attorney's fees based upon an hourly rate even though agreement with client was contingency-based); *see also Ada County Highway District v. Acarrequi,* 105 Idaho 873, 673 P.2d 1067 (1983) (the court should not automatically adopt the contingent fee or contractual arrangement; instead, the fee awarded may be more or less than that provided by the lawyer-client contract); *Lanier v. Moore–Handley, Inc.,* 575 So.2d 83 (Ala.1991) (a fee arrangement between the client and his attorney is not conclusive evidence of a reasonable attorney fee; therefore, the court affirmed an award which exceeded the agreed upon hourly rate). Instead, the court should consider the following six factors when determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. *Blumberg, supra.* Further, on appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor. *Id.*

Because the contract between respondents and their attorney did not control the trial judge's determination of a reasonable hourly rate, the trial judge did not abuse his discretion in determining the reasonable hourly rate was $125, instead of the hourly rate of $110 the Jacksons and their attorney had agreed to in their contract. Further, sufficient evidence on the record supports each of the *Blumberg* factors. Thus, the award is affirmed.

### II. Continuance Because Attorney was Absent

■ Appellants claim the trial judge erred in failing to continue the hearing because their counsel was medically unable to attend. We disagree.

■ A motion for continuance is within the sound discretion of the trial court and the ruling will not be reversed without a clear showing of abuse. *First Savings Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994); *South Carolina Department of Social Services v. Broome,* 307 S.C. 48, 413 S.E.2d 835 (1992).

■ The trial judge did not abuse his discretion. Mrs. Broome, who claimed to be the attorney for Kelley, was unable to attend the hearing due to illness. Although the trial judge had attempted to schedule this hearing with Mrs. Broome instead of Mr. Broadwater, who was counsel of record for appellants, no substitution of counsel has been filed with the court. Thus, once Mr. Broadwater appeared, the attorney of record for appellants was present and there was no longer a need to continue the case. Further, when Mrs. Broome's law partner, Mr. Broome, appeared to request a continuance, it became apparent that Mr. Broome was familiar with the case. Also, as an experienced family law attorney, Mr. Broome was competent to address the issues involved in an attorney's fees hearing. Thus, Mr. Broome was capable of filling in for Mrs. Broome. Further, appellants have shown no prejudice as a result of the refusal to grant the continuance.

Broome initially claimed the hearing should not proceed because his attorney, Mr. Broadwater, was not present. However, once Mr. Broadwater appeared, Broome claimed Mr. Broadwater was no longer his attorney and he asked for a continuance in order to obtain counsel. Because Broome had already been granted a continuance based on this ground in July 1994, the trial judge did not abuse his discretion in denying Broome's request for another continuance. Broome had ample time to employ another attorney. Further, Broome has failed to show prejudice as a result of the refusal to grant the continuance.

### III. Notice

■ Appellants claim the trial judge erred in failing to continue the hearing because they were not given adequate notice of the hearing as required under Rule 6(d), SCRCP. We disagree.

Rule 6(d), SCRCP, provides notice of a hearing "shall be served not later than ten days before the time of the hearing, unless a different period is fixed ... by order of the court." Here, on February 1, 1995, the hearing date was set by an order of the trial judge. Thus, a different period was fixed by order of the court and appellants were not entitled to ten days notice.

Appellants further claim the Motion for Attorney's Fees was not properly served upon them because a detailed accounting of the fees and expenses charged to Mr. and Mrs. Jackson was not included. We disagree.

The Jacksons served this motion on May 17, 1994 by sending a copy to Mr. Broadwater, appellants' trial counsel. Mr. Broadwater testified at the hearing he had received this motion and all its attachments, including an itemized statement of fees and expenses. Mr. Broadwater also testified Broome received a copy of this motion and its attachments. Further, appellants were aware attorney's fees would be assessed against them and, after the verdict, they had ample time to obtain a copy of the itemized statement which was filed with the court and served on appellants' trial attorney. Therefore, this argument is without merit.

## IV. Rule 11, SCRCP

Appellants claim the trial judge erred in refusing to strike the motion for attorney's fees because Mr. and Mrs. Jackson failed to comply with Rule 11, SCRCP. We disagree.

Rule 11 requires "[a]ll motions filed shall contain an affirmation that the movant's counsel prior to filing the motion has communicated, orally or in writing, with opposing counsel and has attempted in good faith to resolve the matter ... unless the movant's counsel certifies that consultation would serve no useful purpose, or could not be timely held." The penalty for noncompliance is to strike the motion unless the attorney promptly amends the document to comply with the rule.

Although technically the Jacksons' motion does not comply with Rule 11(a), the trial judge did not abuse his discretion in refusing to strike the motion. At the hearing, the trial judge found it would be pointless for the Jacksons to attempt to consult with appellants about this matter before filing this

motion. This finding by the trial judge is adequate to cure the deficiency under the facts of this case. Further, the Jacksons had requested the attorney's fees and costs in their complaint and after the verdict they renewed their request. Mr. and Mrs. Jackson filed their written motion on May 17, 1994, and served it on appellants' trial attorney. Thus, appellants had nine months to object to the form of this written motion.

## V. Rule 204, SCACR

■■■ Appellants claim the trial judge lacked jurisdiction to determine attorney's fees because appellants' timely appeal of the jury verdict barred this hearing under Rule 204, SCACR. We disagree.

Although service of notice of an intent to appeal divests the lower court of jurisdiction over the order appealed, the lower court retains jurisdiction over matters not affected by the appeal. Rule 204, SCACR; *Andrick Development Corp. v. Maccaro*, 280 S.C. 103, 311 S.E.2d 95 (Ct.App.1984).

Initially, we note this issue was not raised to the trial judge. Instead, at the hearing, appellants argued that Rule 54(d), SCRCP, prevented the trial judge from holding this hearing. Nonetheless, on the merits, prior to the appeal of the jury verdict, Mr. and Mrs. Jackson had requested attorney's fees and appellants did not appeal the propriety of awarding attorney's fees pursuant to the statute. Therefore, the award of attorney's fees and costs was not affected by the appeal. *See Carolina Business Brokers v. Strickland*, 301 S.C. 434, 392 S.E.2d 469 (Ct.App.1990).

## VI. Costs

■■■ Appellants claim the trial judge failed to make findings of fact concerning the specific costs expended. We disagree.

Appellants failed to object to this issue either at the hearing or in their motion to alter or amend the order. Therefore, this issue is not preserved for appellate review. *SSI Medical Services, Inc. v. Cox*, 301 S.C. 493, 392 S.E.2d 789 (1990) (an

issue not raised or ruled upon by the trial judge cannot properly be presented to an appellate court).

**AFFIRMED.**

TOAL, A.C.J., MOORE and WALLER, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.