343 S.C. 129 (2000)
538 S.E.2d 285
SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,
v.
Nicole N. SMITH, Alexander Camn, Anthony Gilmore, and Nicole Octavia Smith, DOB: 10-09-89, and Vincent Antonio Davis, DOB: 4-7-92, minors under the age of fourteen (14) years, of whom Nicole N. Smith is the, Appellant.
No. 3251.
Court of Appeals of South Carolina.
Heard September 13, 2000.
Decided October 9, 2000.
Rehearing Denied December 18, 2000.
*132 D. Cravens Ravenel, of Baker, Ravenel & Bender, of Columbia, for appellant.
Lyn Howell Hensel, of SC Department of Social Services, of Columbia, for respondent.
Guardian ad Litem: Elisabeth C. Gallant, of Columbia.
HUFF, Judge:
Nicole N. Smith appeals a family court order terminating her parental rights to her minor children, Nicole Octavia Smith and Vincent Davis. We affirm.

FACTUAL/PROCEDURAL BACKGROUND
The South Carolina Department of Social Services removed Smith's children from the home in February of 1995. They were subsequently returned to her care. On August 15, 1995, the family court issued an ex parte order granting DSS *133 emergency protective custody of the children. The order stated Smith was incarcerated and the children were in the custody of an aunt who may be involved in drugs. In addition, the order stated Smith had tested positive for drugs in June of 1995 after being ordered to remain drug free. The family court consolidated the February, 1995 action with the August, 1995 action. The children have remained in the custody of DSS since their removal in August of 1995.
On January 15, 1997, DSS filed a complaint seeking termination of Smith's parental rights. Following a three day hearing on the matter, the family court determined Smith's parental rights to the children should be terminated. The court found the children had lived outside of Smith's home for a period of six months and Smith had wilfully failed to visit or support them. In addition, the family court found the children were removed from Smith pursuant to S.C.Code Ann. Section 20-7-736 for at least six months and, despite DSS's reasonable and meaningful efforts to provide appropriate rehabilitative services, Smith failed to remedy the conditions that caused removal. Accordingly, the family court terminated Smith's rights to the children and ordered DSS to submit a plan for permanent placement of the children.

LAW/ANALYSIS

1. Standard of Review
In a termination of parental rights case, the best interests of the children are the paramount consideration. South Carolina Dep't of Social Servs. v. Vanderhorst, 287 S.C. 554, 340 S.E.2d 149 (1986); South Carolina Dep't of Social Servs. v. Richardson, 298 S.C. 130, 378 S.E.2d 601 (Ct.App. 1989). A decision by the family court to terminate parental rights must be supported by clear and convincing evidence. Hopkins v. South Carolina Dep't of Social Servs., 313 S.C. 322, 437 S.E.2d 542 (1993). On appeal, this court may review the record and make its own findings as to whether clear and convincing evidence supports termination. South Carolina Dep't of Social Servs. v. Broome, 307 S.C. 48, 413 S.E.2d 835 (1992); South Carolina Dep't of Social Servs. v. O'Banner, 291 S.C. 253, 353 S.E.2d 151 (Ct.App.1987). Due deference, however, is accorded the decision of the family court judge, who *134 saw and heard the witnesses and is in a better position to evaluate their credibility and assign comparative weight to their testimony. Hooper v. Rockwell, 334 S.C. 281, 513 S.E.2d 358 (1999); see also Aiken County Dep't of Social Servs. v. Wilcox, 304 S.C. 90, 93, 403 S.E.2d 142, 144 (Ct.App.1991) ("[W]here the evidence presented in the record adequately supports the findings of the trial judge, due deference should be given to his judgment based on his superior position in weighing such evidence. This is especially true in cases involving the welfare and best interests of children.") (citations omitted).

2. Jurisdiction
Smith asserts the family court and DSS lacked jurisdiction under S.C.Code Ann. § 20-7-736 by virtue of a failure to find abuse or neglect following the removal of the children from Smith's home.[1] She argues, because no finding of abuse or neglect was ever made, the children were improperly removed under § 20-7-736(F) and the court, therefore, was deprived of jurisdiction. We disagree.
We first note Smith cites no authority for the proposition that, following removal of a child from the home of a parent, a failure by the court to make a finding of abuse or neglect deprives the family court of jurisdiction in a subsequent *135 termination of parental rights action. The law provides the family court has exclusive jurisdiction over all proceedings involving the termination of parental rights. S.C.Code Ann. § 20-7-1562 (Supp.1999). We are aware of no provision divesting the court of that jurisdiction based on alleged improper removal of a child. Further, whether or not there was no finding of abuse or neglect is questionable. In an order dated May 22, 1997, the family court stated, "That there has been no finding of abuse or neglect in this case and this order shall so reflect." However, in an unchallenged order dated September 21, 1995, the family court found, by a preponderance of the evidence, physical neglect of the children.[2] Finally, assuming arguendo the May 1997 order supersedes the September 1995 order and there was therefore no finding of abuse or neglect, we hold the lack of such a finding in this case did not deprive the family court of jurisdiction over a proceeding for termination of Smith's parental rights. In an unappealed order dated December 10, 1996, Smith consented to DSS retaining custody of her children. She therefore acquiesced in the placement of her children in the care of DSS, and the initial reason for removal is irrelevant. Accordingly, we find no jurisdictional defect.

3. Failure to visit or support
The termination of parental rights is governed by statute. South Carolina Code Ann. § 20-7-1572 provides for termination upon the family court's finding at least one of several grounds and that termination is in the best interest of the child. Here, the family court found evidence to sustain the following statutory grounds for termination:
(2) The child has been removed from the parent pursuant to Section 20-7-736, has been out of the home for a period of six months, and the parent has not remedied the conditions which caused the removal;
(3) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to visit the child ...;

*136 (4) The child has lived outside the home of either parent for a period of six months, and during that time the parent has wilfully failed to support the child....
S.C.Code Ann. § 20-7-1572 (Supp.1997).
Smith argues the legislature did not intend for termination under subsections (3) and (4) when the separation from the home is imposed pursuant to § 20-7-736 under subsection (2). She asserts subsections (3) and (4) apply only where subsection (2) does not. We disagree with this interpretation.
The primary concern in interpreting a statute is to determine the intent of the legislature. Whitner v. State, 328 S.C. 1, 492 S.E.2d 777 (1997). Where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself. Id. A statute must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the legislature. Beattie v. Aiken County Dep't of Social Servs., 319 S.C. 449, 462 S.E.2d 276 (1995).
We find no language in the statute to indicate the General Assembly intended to limit the termination of parental rights for failure to support or visit the child to situations where the child is out of the home for reasons other than removal by DSS. Indeed, S.C.Code Ann. § 20-7-1560 (Supp. 1999) states, "The purpose of this subarticle is to establish procedures for the reasonable and compassionate termination of parental rights where children are abused, neglected, or abandoned in order to protect the health and welfare of these children...." Section 20-7-736 provides for the removal of children from the custody of a parent or guardian in situations where the child is abused or neglected and cannot be protected from unreasonable risk of harm. See S.C.Code Ann. § 20-7-736(B) and (F) (Supp.1997). Clearly, the statute as a whole contemplates the children will be living outside the home based on removal pursuant to § 20-7-736. Where legislative design is unmistakable, there is no room for construction and the courts are required to apply the statute literally. Morgan v. South Carolina Dep't of Social Servs., 280 S.C. 577, 313 S.E.2d 350 (Ct.App.1984). See also Hooper v. Rockwell, supra. (affirming the termination of parental rights for wilful failure to support when the child had been taken into emergency *137 protective custody). Accordingly, we find no merit to Smith's argument.
Smith also asserts the evidence does not support a finding that she wilfully failed to visit or support her children. We disagree. Whether a parent's failure to visit or support a child is "wilful" within the meaning of § 20-7-1572 is a question of intent to be determined from all the facts and circumstances in each case. Broome, 307 S.C. 48, 413 S.E.2d 835 (1992). Parental conduct "which evinces a settled purpose to forego parental duties may fairly be characterized as `willful' because it manifests a conscious indifference to the rights of the child to receive support and consortium from the parent." Id. at 53, 413 S.E.2d at 839. While the trial judge is given wide discretion in making this determination, the element of willfulness must be established by clear and convincing evidence. Id. at 52, 413 S.E.2d at 838.
Smith asserts she visited the children many times. However, the record indicates, while Smith visited the children thirteen times from August of 1995 until January of 1997, the visitations were often sporadic, with three and four month lapses between some visits.[3] Most importantly, she did not visit them at all from January of 1997 until the termination hearings began in December of 1997. Smith had a right to reasonable visitation with her children, which she failed to exercise. We find Smith's evident indifference to seeing her children constitutes wilfulness sufficient to support termination.
Smith also argues her failure to support the children was not wilful. In an order dated January 21, 1997, the family court ordered Smith to pay child support of thirty-five dollars per month. Smith failed to make any child support payments. Smith asserts her failure to support the children was due to her inability to acquire gainful employment caused by her increasing seizure activity.
*138 The record shows Smith suffers from epilepsy and has a tenth grade education. She stated she worked at McDonald's until 1995 when she lost her job because of her seizures. She testified she recently sought employment with Quincy's, Mc-Donald's, and Hardee's, but received no offers of employment. Smith takes Dilantin to control the seizures. She stated she does not have seizures when she takes her medication. She acknowledged that, according to the directions on the medicine, she is not to drink alcohol while taking the medication. However, Smith admitted that she continued to drink alcohol.
Although we are sympathetic to Smith's health problems, we do not find her epilepsy relieves her of her duty to support her children. Smith provided no evidence that she was unable to obtain employment outside of the food service industry. Furthermore, she admittedly consumes alcohol despite its contraindication for her seizure medicine. Accordingly, we find Smith's failure to pay child support constitutes wilfulness sufficient to justify termination.

4. Failure to rehabilitate
Smith argues the family court erred in finding she had not completed the programs of rehabilitation. We disagree.
Conditions which precipitated the removal of the children included substance abuse by Smith, lack of supervision of the children, and inadequate housing. DSS developed numerous treatment plans for Smith. The plans' objectives included that Smith was to never leave the children unattended, and she was to work with the homemaker service and apply for housing. Smith was also required to refrain from using drugs and alcohol and was to participate in a counseling or treatment program for substance abuse and undergo random drug tests. She was also required to successfully participate in and complete parenting skills classes. DSS referred her to the Lexington-Richland Alcohol and Drug Abuse Council (LRADAC) and parenting skills classes. In addition, Smith was not to have visitation with the children while under the influence of drugs or alcohol.
The record shows Smith was admitted to LRADAC on June 8, 1995, March 21, 1996, and October 3, 1996. Each time she *139 was discharged for refusal of treatment, failure to follow services and/or refusal of detox. Smith was also referred to parenting classes on two occasions. In the class held September 28, 1995 to December 21, 1995 Smith attended five of twelve classes. In the class held January 9, 1997 to April 3, 1997, Smith attended only three of the twelve classes. No certificate was awarded Smith because of her lack of attendance. According to the DSS homemaker aide, Smith failed to successfully rehabilitate with the homemaking services as well. Smith did not follow the homemaker's advice and was unavailable when the homemaker visited. Furthermore, a DSS social service aide testified that during one visitation, Smith smelled of alcohol and exhibited signs of an intoxicated person. Smith admitted she continued to use alcohol and had been drinking when she visited the children. Smith stated she wanted to take her children home with her. Her "home" at the time of the hearing was with her boyfriend, whom she had known for only three to six months. Although she was apparently financially dependent on him, she stated she did not know where he worked or how he earned his income. She also admitted she did not know his age, testifying one time that he was forty-one years old and another time that he was fiftyone.
Smith first asserts the evidence relied upon by the family court was improperly admitted. She asserts the DSS case workers did not have personal knowledge about the completion of the various programs to which Smith was referred.
Smith objected to the admission of Smith's file at LRADAC, asserting the file would contain information that was opinion testimony. However, she agreed to allow the LRADAC witness to testify about Smith's attendance and whether she completed the program. Similarly, she consented to the admission of Smith's attendance records at the parenting classes. Smith therefore cannot challenge the admission of this evidence on appeal. See Jackson v. Speed, 326 S.C. 289, 486 S.E.2d 750 (1997) (a party who fails to object to the admission of evidence when it is offered cannot make its admission a ground for appeal). Further, Smith objected only to the admission of notes of the DSS aide from homemaker services, and these notes were not admitted into evidence. The aide testified, without objection, about her recollection of *140 her own experiences with Smith. Her testimony therefore did not constitute hearsay. Finally, the testimony of the DSS caseworkers is cumulative to the above testimony. Accordingly, we find that even if their testimony constituted hearsay, the admission of the evidence was harmless. See Jackson, supra (stating where the hearsay is merely cumulative to other evidence, its admission is harmless and does not constitute reversible error).
Smith also asserts she successfully completed an in-patient program at Morris Village. Although Smith testified that she had completed the program, she only presented a certificate for recognition for progress in treatment. She presented no evidence that corroborated her testimony that she completed the program. We defer to the family court, which was in the better position to judge Smith's credibility. Furthermore, considering Smith's admitted continued use of alcohol and failure to complete other programs, we find Smith failed to remedy the conditions of removal, thereby justifying termination of her parental rights.
For the foregoing reasons, the decision of the family court is
AFFIRMED.
GOOLSBY and ANDERSON, JJ., concur.
NOTES
[1] South Carolina Code Ann. § 20-7-736 (Supp.1997) provides in part:

(B) Upon investigation of a report received under Section 20-7-650 or at any time during the delivery of services by the department, the department may petition the family court to remove the child from custody of the parent, guardian, or other person legally responsible for the child's welfare if the department determines by a preponderance of evidence that the child is an abused or neglected child and that the child cannot be protected from unreasonable risk of harm affecting the child's life, physical health or safety, or mental well-being without removal....
...
(F) A child must not be removed from the custody of the parent or guardian unless the court finds that the allegations of the petition are supported by a preponderance of evidence including a finding that the child is an abused or neglected child as defined in Section 20-7-490 and that retention of the child in or return of the child to the home would place the child at unreasonable risk of harm affecting the child's life, physical health or safety, or mental well-being and the child cannot reasonably be protected from this harm without being removed.
[2] In addition, in an April 29, 1996 order, the family court made a finding of threat of harm of physical neglect. Smith challenged this order with a motion pursuant to Rule 60, SCRCP asserting she was not given notice of the hearing. This motion was never heard.
[3] The dates of visitation are September 21, 1995, October 18, 1995, November 6, 1995, February 2, 1996, March 4, 1996, March 26, 1996, April 17, 1996, July 17, 1996, August 2, 1996, August 9, 1996, August 14, 1996, December 2, 1996, and January 8, 1997.