# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Paul David Hess, APRN-BC, Respondent-Appellant,

v.

Morphis Pediatric Group of Lancaster, P.A.; Elizabeth J. Morphis, M.D.; Gregory M. Alexander, CPA; and Moore Beauston and Woodham, LLP; Defendants,

Of whom Morphis Pediatric Group of Lancaster, P.A. and Elizabeth J. Morphis, M.D. are Appellants-Respondents.

Appellate Case No. 2022-001589

---

Appeal From Lancaster County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 6115
Heard November 7, 2024 – Filed July 9, 2025

---

## AFFIRMED IN PART, REVERSED IN PART

---

Charles Franklin Thompson, Jr., of Malone Thompson Summers & Ott, LLC, of Columbia, for Appellants-Respondents.

David Eliot Rothstein, of Rothstein Law Firm, P.A., of Greenville, for Respondent-Appellant.

---

**VINSON, J.:** In this cross-appeal, Morphis Pediatric Group of Lancaster, PA (MPG) and Elizabeth J. Morphis, M.D. (Dr. Morphis), appeal the circuit court's

orders (1) denying their posttrial motions for judgment notwithstanding the verdict (JNOV) and remittitur; (2) granting Paul David Hess's motion for an award of treble damages, attorney's fees, and prejudgment interest; and (3) denying their motion to amend the order granting Hess's motion for prejudgment interest. In his cross-appeal, Hess argues the circuit court erred by *sua sponte* reducing his attorney's fee award to a rate of $300 per hour when MPG and Dr. Morphis expressly waived any argument regarding the reasonableness of counsel's hourly rate.  We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

MPG is a pediatric clinic in Lancaster, South Carolina, operated by Dr. Morphis. Hess began working as a nurse practitioner at MPG at the beginning of 2009, at a base salary of $100,000 per year.  In 2010, Hess entered into a written employment agreement (the 2010 Agreement) with MPG.  The 2010 Agreement kept Hess's base salary of $100,000 per year and stated "[a]ll or any bonuses shall be at the discretion of the Board[1] or as determined in any appendix that is hereby signed and agreed upon by the parties."  Appendix A of the 2010 Agreement states:

> Provided that the employee meets criteria as decided upon by the Board, the employee will be eligible for an annual bonus paid by the company based on the following formulation.  All end of the year profits generated by this above mentioned business shall be divided and the employee is granted 50% (fifty percent) of the said monies after all debts, expenses, royalties, and expenditures have been allowed.  These monies will be determined by the Company Accountant after the close of the year on December 31st of each calendar year and payable by the 15th of February.

Both Dr. Morphis and Hess signed the 2010 Agreement.

In 2015, MPG's accountant and Dr. Morphis talked to Hess about changing his yearly bonus to 5% of MPG's gross revenues.  They scheduled a meeting with Hess on May 28, 2015, to discuss the issue further.  Before the meeting, the accountant, Gregg Alexander, emailed Dr. Morphis for confirmation concerning what information he could share with Hess during the meeting.  Alexander stated that if Hess asked for information Dr. Morphis was uncomfortable sharing he would

---

[1] Dr. Morphis is sole officer and board member of MPG.

respond "[t]hat is part of a larger tax position we are taking for [Dr. Morphis] personally and the details are not relevant." In a May 28, 2015 email sent to Dr. Morphis after their meeting with Hess, Alexander attached a spreadsheet which showed MPG's gross revenues, Hess's bonuses as a percentage of the gross revenues, net income, doctor bonuses, and net income before doctor bonuses. Alexander stated in the email that the spreadsheet was for Dr. Morphis's benefit only and that he would not share it with Hess. In another May 28, 2015 email sent to Dr. Morphis and Hess, Alexander attached a spreadsheet that included MPG's gross revenues and Hess's bonuses as a percentage of the gross revenues, but not the information regarding the net income of MPG and doctor bonuses included on the spreadsheet sent to Dr. Morphis.

In a June 1, 2015 email to Dr. Morphis, Hess agreed to changing the method of calculating his bonus to 5% of the gross revenues but stated he had some questions about the proposed agreement. At the end of 2015, Dr. Morphis presented Hess with a proposed agreement changing the bonus calculation method as they previously discussed. On December 20, 2015, Hess sent an email to Dr. Morphis stating his accountant had some concerns about the agreement and proposed an increase in his base pay to $150,000 per year with annual increases of 2%–5% based on revenue, quarterly payments for attention-deficit/hyperactivity disorder appointments he covered, and four weeks' vacation. Hess stated in the email that he was agreeable to receiving 5% of the gross revenue for his bonus. Hess also stated in the email that Dr. Morphis would not share financial information with him, which implied she was hiding something or did not trust him with the information. On December 30, 2015, Hess signed a new employment agreement (the 2015 Agreement), which was retroactively effective from March 1, 2015, that changed his annual bonus from 50% of MPG's net income to 5% of MPG's gross revenues. Hess was paid bonuses in 2015, 2016, and 2017 under the 2015 Agreement.

Hess filed his complaint against MPG, Dr. Morphis, Alexander, and Moore Beauston & Woodham LLP[2] on September 27, 2018. His complaint alleged causes of action for Violation of the South Carolina Payment of Wages Act (the Wage Payment Act),[3] breach of contract, breach of contract accompanied by a fraudulent act, tortious interference with a contract, fraud or constructive fraud, negligent misrepresentation, declaratory judgment, and equitable accounting. Hess

---

[2] Moore Beauston & Woodham LLP, the accounting firm where Alexander worked, is not a party to this appeal.

[3] S.C. Code Ann. §§ 41-10-10 to -110 (2021).

contended MPG and Dr. Morphis "failed and refused to pay [him] the full amount of annual bonuses he earned pursuant to the 2010 Employment Agreement" and "failed and refused to provide to [him] any detailed financial information about the practice on which his annual bonuses were to be based."

The case proceeded to a jury trial. During trial, Hess testified that MPG and Dr. Morphis paid him a yearly bonus of $75,000 in 2010, $25,000 in 2011, $46,968.48 in 2012, $48,000 in 2013, and $48,000 in 2014. Hess stated Dr. Morphis did not explain why his bonus dropped from $75,000 to $25,000 between 2010 and 2011 or the financial information used to calculate his bonus. He testified he asked Dr. Morphis if he could see MPG's financial reports to determine how to improve its profitability. Hess recalled that whenever he asked for more financial information, Dr. Morphis responded that she did not know the answer and would have to ask Alexander.

Hess testified that in 2014 he questioned Dr. Morphis after he received his W-2 without his usual yearly bonus included. He stated Dr. Morphis directed his questions to Alexander, who told him they forgot the bonus when they were switching MPG from a C-Corp to an S-Corp and that they would pay him $48,000—the same bonus he received in 2013. He agreed it was odd that he was receiving the same bonus as the year before because he had "never seen a company make the same amount of money every year in a row." Hess testified he did not receive his 2014 bonus until March 2015, which affected his tax liability for 2015.

Hess testified that at the May 2015 meeting, he discussed changing the method of determining his bonus from 50% of MPG's net profits to 5% of MPG's gross revenues with Dr. Morphis and Alexander. Hess stated Alexander provided him with a spreadsheet at the meeting, which he later emailed to Hess, showing he would receive approximately the same bonus if they changed the calculation method to 5% of MPG's gross revenues. Hess testified that when he asked Alexander whether he had been receiving 50% of MPG's net profits in the previous years, Alexander responded that he could not divulge the information because it involved Dr. Morphis's private tax information. He stated he never received the version of the spreadsheet Alexander sent to Dr. Morphis, which included the net income, doctor bonuses, and net income before doctor bonuses for each year.

Hess testified that he signed the 2015 Agreement on December 30, 2015, which changed the method of calculating his bonus to 5% of MPG's gross revenues. Hess stated that his 2015 bonus under the 2015 Agreement was $70,000. He denied knowing MPG's net income was more than half a million dollars when he signed the 2015 Agreement.

Hess stated Dr. Morphis began saying MPG was losing money and told him she planned to sell the practice in January 2018. He recalled that he and Dr. Hussey, another provider at MPG, decided to try to buy the practice from Dr. Morphis. Hess testified he gained access to MPG's financial information when he and Dr. Hussey made an offer on the practice. He stated he then learned Dr. Morphis was running the lease for her BMW through and drawing a monthly salary from MPG. Hess stated Dr. Morphis rejected his and Dr. Hussey's offer for the practice because she said it was "embarrassingly low," then fired him and Dr. Hussey shortly thereafter. Hess testified he never received a bonus of 50% of MPG's net profits and that he sought total damages of $656,950.82 for the bonuses he never received while working for MPG.

Dr. Morphis testified her lawyer drafted the 2010 Agreement. She agreed Hess received a bonus at the end of every year he worked at MPG and that this indicated he met the criteria for receiving a bonus as described in Appendix A of the 2010 Agreement. She testified MPG's accountant did not calculate the bonus but would provide her with MPG's net income for the year. Dr. Morphis stated her husband believed she was overpaying Hess when she gave Hess a bonus of $75,000 in 2010 because this was well above the average salary for a nurse practitioner. She did not recall telling Hess she was taking $180,000 in compensation in 2011 or that she was running the lease for her BMW through MPG. She agreed that the accounting records showed she paid herself a bonus of $330,000 in December 2012, $151,000 in 2013, and $81,212.80 in 2014. Dr. Morphis testified she told Alexander to make Hess's bonus $48,000 for 2014 after forgetting to give him a bonus at the end of the year. When asked if Hess would have known he was not receiving half of MPG's net income had she shown him MPG's financial information, Dr. Morphis responded she believed "he would understand the numbers if [she] had shown him the numbers." Dr. Morphis recalled that Hess's questioning of her regarding MPG's finances was "constant and intimidating." She testified that she stated in an email to Alexander that she never wanted to be paid from MPG "because [she] feared [Hess] would question [her]." On redirect examination, Dr. Morphis testified she believed she had been fair to Hess. She stated she had discretion in regard to his bonus and that she "always chose the calculation." She later testified she chose to use the formula in Appendix A to calculate Hess' bonus each year because she was "trying to be fair."

MPG and Dr. Morphis moved for directed verdict, arguing (1) the statute of limitations barred Hess's claims because he knew or should have known he had a claim more than three years before he initiated the lawsuit; (2) Hess's bonus was discretionary and not an enforceable contract promise; (3) the terms of the bonus

were too indefinite to be enforced; (4) Hess's claims under the Wage Payment Act and for breach of contract accompanied by a fraudulent act failed without an enforceable contract; (4) profit sharing plans are excluded from the Wage Payment Act; (5) MPG and Dr. Morphis did not breach any contractual promise in place by deducting her salary and expenses; (6) Hess had no viable claims for fraud or misrepresentation under the 2010 Agreement; and (7) Hess could not assert fraud or negligence claims when the duty was solely contractual. The circuit court denied the motion.

The jury returned a verdict in favor of Hess, awarding him $548,290.42 in total damages against MPG and Dr. Morphis based on all of his causes of action and $475,000 in punitive damages based on his causes of action for breach of contract accompanied by a fraudulent act, fraud, and negligent misrepresentation. Hess decided to forego the jury's verdict for punitive damages and to pursue his full remedies under the Wage Payment Act, including treble damages and attorney's fees and costs. In his petition for attorney's fees, Hess stated his counsel's regular hourly rate was $350, but he requested the court award fees at an hourly rate of $450 because his counsel expected to receive a premium above his regular rate for cases taken on a contingency basis given the additional risk involved in such cases. Hess filed a petition for treble damages, attorney's fees and costs, and prejudgment interest. MPG and Dr. Morphis filed posttrial motions for JNOV and remittitur. On the issue of remittitur, MPG and Dr. Morphis argued that Hess could not recover his 2015 bonus under the 2010 Agreement while retaining the benefits of the 2015 Agreement for 2016 and 2017. The circuit court denied MPG and Dr. Morphis's motions for JNOV and remittitur and granted Hess's petition for treble damages, attorney's fees and costs, and prejudgment interest, awarding him $1,644,871.26 in damages, $156.727.50 in attorney's fees, $9,596.89 in costs, and prejudgment interest through the date of November 2, 2022.

In its order awarding attorney's fees, the circuit court stated Hess's counsel testified that his fee agreement with Hess was a hybrid contingency agreement with an hourly reduced rate of $125 and a reduced contingency percentage of 25% of any recovery. Based on the reduced hourly rate of $125, the circuit court found awarding attorney's fees at a rate of $300 per hour was appropriate given the additional risk involved in taking the case on a partially contingent basis. In its analysis of the customary legal fees for similar services factor of the attorney's fees determination, the circuit court noted that Hess's counsel testified he received "at least $350 per hour in numerous employment cases in South Carolina within the last ten years," but it awarded him $300 per hour "as an increase from the rate contracted for within the hybrid contingency agreement." In a separate Form 4

order, the circuit court awarded Hess $407,021.15 in prejudgment interest. MPG and Dr. Morphis moved to amend the circuit court's order on prejudgment interest, requesting that the circuit court address their argument that Hess was not entitled to prejudgment interest. The circuit court denied the motion. This cross-appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err by failing to find the three-year statute of limitations barred Hess's causes of action?

2. Did the circuit court err by finding Hess's bonus was an enforceable contractual promise?

3. Did the circuit court err by finding the terms of the contract were not too indefinite or unclear to be enforced?

4. Did the circuit court err by finding MPG and Dr. Morphis were contractually obligated to minimize certain expenses so that Hess's bonus was unaffected?

5. Did the circuit court err by finding that Hess could seek a higher bonus than that based on the net income "as determined by the Company accountant" when the bonus agreement states the bonus was to be paid on monies determined by the accountant?

6. Did the circuit court err in finding that MPG and Dr. Morphis failed to give Hess the required seven-days' notice of a change in his compensation and that a notice failure entitles an employee to full damages, including the ability to set aside the change in compensation?

7. Did the circuit court err in failing to remit Hess's damages because he made more money in 2016 and 2017 under the 2015 Agreement than he would have had the 2010 Agreement been in effect?

8. Did the circuit court err in finding that Hess was entitled to a treble damage award and attorney's fees when MPG and Dr. Morphis had a bona fide reason for believing additional compensation was not due, there were legitimate legal defenses to payment of his claim, the jury did not award all the money Hess sought, and the circuit court applied a new theory under section 41-10-80?

9. Did the circuit court err in awarding prejudgment interest?

10. Did the circuit court err in reducing Hess's attorney's fee award?

**STANDARD OF REVIEW**

"When reviewing a motion for directed verdict or JNOV, an appellate court must employ the same standard as the trial court." *Wright v. Craft*, 372 S.C. 1, 18, 640 S.E.2d 486, 495 (Ct. App. 2006). "In determining these motions, the circuit court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party." *Kunst v. Loree*, 424 S.C. 24, 38, 817 S.E.2d 295, 302 (Ct. App. 2018). "If the evidence at trial yields more than one reasonable inference or its inference is in doubt, the circuit court must deny the motion for directed verdict or JNOV." *Id.* "Neither the trial court nor this court has the authority to make credibility determinations or resolve conflicting evidence." *Dawkins v. Sell*, 434 S.C. 572, 580, 865 S.E.2d 1, 5 (Ct. App. 2021). "The trial court's ruling on a directed verdict or JNOV motion will be reversed only if the ruling is governed by an error of law or no evidence supports the ruling." *Id.*

"The award of prejudgment interest will not be disturbed on appeal unless the trial court committed an abuse of discretion." *Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 435, 673 S.E.2d 448, 457-58 (2009).

When reviewing an award of treble damages under the Wage Payment Act, the appellate court can take its own view of the facts. *Goodwyn v. Shadowstone Media, Inc.*, 408 S.C. 93, 98, 757 S.E.2d 560, 563 (Ct. App. 2014).

"The decision to award or deny attorneys' fees and costs will not be disturbed on appeal absent an abuse of discretion." *Maybank v. BB&T Corp.*, 416 S.C. 541, 579-80, 787 S.E.2d 498, 518 (2016).

**MPG AND DR. MORPHIS'S APPEAL**

**I.      Denial of JNOV**

**A.      Statute of Limitations**

MPG and Dr. Morphis argue the circuit court erred by denying their motion for JNOV on the ground that the Wage Payment Act's three-year statute of limitations barred Hess's causes of action. They argue Hess knew or should have known about his claims regarding his bonus three years before he filed his lawsuit on September 27, 2018. We disagree.

Under the Wage Payment Act, "[a]ny civil action for the recovery of wages must be commenced within three years after the wages become due." § 41-10-80. "According to the discovery rule, the statute of limitations begins to run when a

cause of action reasonably ought to have been discovered." *Dean v. Ruscon Corp.*, 321 S.C. 360, 363, 468 S.E.2d 645, 647 (1996). "The statute runs from the date the injured party either knows or should have known by the exercise of reasonable diligence that a cause of action arises from the wrongful conduct." *Id.* "A cause of action should have been discovered through exercise of reasonable diligence when the facts and circumstances would have put a person of common knowledge and experience on notice that some right had been invaded or a claim against another party might exist." *Maher v. Tietex Corp.*, 331 S.C. 371, 377, 500 S.E.2d 204, 207 (Ct. App. 1998). "The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action." *Id.*

We hold the circuit court did not err by denying MPG and Dr. Morphis's motion for JNOV on this issue because the parties presented conflicting evidence at trial as to whether Hess knew or should have known he had a cause of action more than three years before he filed his complaint on September 27, 2018. *See id.* ("The jury must resolve conflicting evidence as to whether a claimant knew or should have known he had a cause of action."). Hess presented evidence that Dr. Morphis purposefully withheld MPG's financial information that was the basis for determining his yearly bonuses from him, therefore preventing him from knowing he was not receiving the bonuses the 2010 Agreement promised him. Hess testified that when he questioned why he received the same bonus in 2014 as he had in 2013, Alexander told him that he received the same bonus because MPG was switching from a C-Corporation to an S-Corporation and they wanted to give him a fair bonus despite the expense of the transition. Testimony was also presented that when they met with Hess in May 2015, Dr. Morphis and Alexander did not share the spreadsheet showing the net income of MPG and the doctor bonuses with Hess, and had they done so, this would have alerted Hess he was not receiving a bonus of half MPG's net income. However, evidence was also presented that Hess knew or should have known about his cause of action more than three years before he filed his complaint. Specifically, Hess testified that during the May 2015 meeting, Alexander refused to answer when Hess asked whether he was receiving a bonus of 50% of the net profits each year because it would require him to divulge Dr. Morphis's private tax information. Because conflicting evidence was presented at trial as to whether Hess knew or should have known of his claims under the Wage Payment Act more than three years before he filed his complaint, we hold the circuit court did not err by submitting this issue to the jury.

**B.**      **Enforceable Contractual Promise and Indefinite Contract Terms**[4]

MPG and Dr. Morphis argue Hess's bonus was discretionary because his employment agreement stated that if he met the "criteria" of the board of MPG he was only "eligible" for a bonus. They argue Hess's contract was an illusory promise because Dr. Morphis's obligation under the contract gave her "sole discretion whether or not to perform" the contract. MPG and Dr. Morphis also contend the formula for Hess's bonus gave Dr. Morphis discretion to deduct anything she wished in making the bonus determination. MPG and Dr. Morphis further argue that even if Hess's bonus was not discretionary, it cannot be enforced because the terms of the bonus provision in the employment agreement were indefinite. They argue that because terms in the bonus provision of the 2010 Agreement such as "criteria," "eligible," "profit," "royalties," "monies," "debts," "expenses," and "expenditures" were undefined and had varying interpretations, Hess's employment agreement was unenforceable and he could not bring a claim for the bonus under the Wage Payment Act. MPG and Dr. Morphis contend there was no ordinary meaning for the undefined terms in Hess's employment agreement. We disagree.

"[A] court will construe any doubts and ambiguities in an agreement against the drafter of the agreement." *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 308, 698 S.E.2d 773, 778 (2010).

> Ambiguous language in a contract should be construed liberally and most strongly in favor of the party who did not write or prepare the contract and is not responsible for the ambiguity; and any ambiguity in a contract, doubt, or uncertainty as to its meaning should be resolved against the party who prepared the contract or is responsible for the verbiage.

*Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 374 S.C. 483, 499-500, 649 S.E.2d 494, 502 (Ct. App. 2007) (quoting *Myrtle Beach Lumber Co. v. Willoughby*, 276 S.C. 3, 8, 274 S.E.2d 423, 426 (1981)).

We hold the circuit court did not err in denying MPG and Dr. Morphis's motion for JNOV based on their argument that the contract was an unenforceable promise because evidence was presented to the jury from which it could determine the 2010 Agreement was enforceable in regard to Hess's bonuses. Specifically, the language

---

[4] We address MPG and Dr. Morphis's Issues II and III together under this heading.

in the 2010 Agreement stating that "[a]ll or any bonuses shall be at the discretion of the Board or as determined in any appendix that is hereby signed and agreed upon by the parties" suggests Dr. Morphis was required to use the method of calculation in Appendix A to determine Hess's bonus. Additionally, Hess's receipt of a bonus each year constitutes evidence MPG determined he met the Board's criteria and was eligible for a bonus pursuant to Appendix A of the 2010 Agreement.

We hold the circuit court did not err in denying MPG and Dr. Morphis's motion for JNOV regarding their argument that the terms of the 2010 Agreement were too indefinite to be enforced because any vagueness or uncertainty in the 2010 Agreement should be construed against them. *See Mathis*, 389 S.C. at 308, 698 S.E.2d at 778 ("[A] court will construe any doubts and ambiguities in an agreement against the drafter of the agreement."). Dr. Morphis testified that the 2010 Agreement was drafted by MPG and Dr. Morphis's attorneys without any input from Hess. Therefore, it was MPG and Dr. Morphis's obligation to define the terms such as "criteria," "eligible," "profit," "royalties," "monies," "debts," "expenses," and "expenditures" that they now argue render the 2010 Agreement unenforceable. Thus, we hold the circuit court did not err in denying MPG and Dr. Morphis's motion for JNOV based on their argument that the 2010 Agreement was not enforceable.

## C.     Breach of Promise

MPG and Dr. Morphis argue they did not breach any contractual promise for a bonus because Hess's employment agreement stated the bonus was based on a determination of the profit and loss by MPG and Dr. Morphis's accountant. They argue the jury should not have been permitted to recalculate MPG and Dr. Morphis's profit by eliminating expenses because the employment agreement made the accountant's determination the final word on the profit. MPG and Dr. Morphis contend Hess's employment agreement did not include a particular way to derive the net income and it stated that "debts, expenses, royalties, and expenditures" could be deducted. They maintain it did not matter how Dr. Morphis's compensation was described by the accountant when determining the yearly profit and loss because it was treated as an expense of MPG. We disagree.

We hold the circuit court did not err in denying MPG and Dr. Morphis's motion for JNOV on this issue because the evidence in the record created more than one reasonable inference as to whether MPG and Dr. Morphis determined Hess's bonuses according to the method set forth in the 2010 Agreement. *See Kunst*, 424 S.C. at 38, 817 S.E.2d at 302 ("If the evidence at trial yields more than one

reasonable inference or its inference is in doubt, the circuit court must deny the motion for directed verdict or JNOV."); *Dawkins*, 434 S.C. at 580, 865 S.E.2d at 5 ("Neither the trial court nor this court has the authority to make credibility determinations or resolve conflicting evidence."). The 2010 Agreement stated that the company accountant would determine Hess's bonus after the close of the year. Although MPG and Dr. Morphis argue that, based on the 2010 Agreement, Alexander's calculation of MPG's profit and loss should be the final word on Hess's bonus, evidence was presented that Alexander did not calculate Hess's bonus. Both Dr. Morphis and Alexander testified that Alexander did not calculate Hess's bonus. Additionally, evidence was presented that in some instances, Dr. Morphis stated what she wanted Hess's bonus to be without relying on any calculation or guidance by the company accountant. For example, in a December 30, 2010 email, Dr. Morphis told MPG's former accountant, Will Woodham, to make Hess's bonus $75,000 for the year. Also, in emails sent after she forgot to give Hess his 2014 bonus, Alexander asked Dr. Morphis, "How much would you like to bonus him?" and she responded she would need to look at MPG's profits again. Further, the spreadsheet Alexander sent to Dr. Morphis showing "what kind of profit [she was] receiving in Lancaster" indicates she did not follow the 2010 Agreement when calculating Hess's bonus. Even though the 2010 Agreement stated Hess's bonus would be 50% of MPG's net profits "after all debts, expenses, royalties, and expenditures have been allowed," the spreadsheet shows Dr. Morphis was receiving "Doctor Bonuses" that accounted for much of MPG's net income before Hess's yearly bonuses were calculated. Based on this evidence, we hold the circuit court did not err by denying MPG and Dr. Morphis's motion for JNOV because whether MPG and Dr. Morphis followed the bonus calculation method in the 2010 Agreement when determining Hess's bonuses was a question of fact for the jury. *See Kunst*, 424 S.C. at 38, 817 S.E.2d at 302 ("If the evidence at trial yields more than one reasonable inference or its inference is in doubt, the circuit court must deny the motion for directed verdict or JNOV.").

**D.     Change in Compensation Notice**

MPG and Dr. Morphis argue Hess cannot bring a claim for damages related to his 2015 bonus based on the notification requirement of the Wage Payment Act, which states that any changes in the terms must be made in writing seven days before becoming effective, because he received more than seven days' notice of the change to his bonus in the 2015 Agreement. They contend that under the Wage Payment Act, no damages remedy is available for a notification violation. MPG and Dr. Morphis further contend that there was no prejudice to Hess because he received more money under the 2015 Agreement than he would have under the

2010 Agreement, and therefore no complaint can be brought under the Wage Payment Act.  We disagree.

Section 41-10-30(A) of the Wage Payment Act states, "Any changes in these terms [of employment] must be made in writing at least seven calendar days before they become effective."  § 41-10-30(A).  "Every employer in the State shall pay all wages due at the time and place designated as required by subsection (A) of Section 41-10-30."  § 41-10-40 (D).

We hold the circuit court did not err in denying MPG and Dr. Morphis's motion for JNOV on the issue of whether Hess could bring a claim under the Wage Payment Act because evidence shows Hess did not have notice of the changes in the 2015 Agreement at the time that his 2015 bonus was paid.  Hess signed the 2015 Agreement on December 30, 2015, and nothing in the record indicates he received his revised contract at an earlier date.  Therefore, under Section 41-10-30(A), the 2015 Agreement could not have been effective until January 6, 2016, seven days after Hess signed the agreement.  *See* § 41-10-30(A) (stating "[a]ny changes in these terms [of employment] must be made in writing at least seven calendar days before they become effective").  According to MPG's 2015 profit and loss statement, Hess's 2015 bonus was calculated on December 31, 2015, before the changes in the 2015 Agreement went into effect on January 6, 2016.  Therefore, we hold Hess's 2015 bonus should be based on the 2010 Agreement, which provided that Hess was to receive a yearly bonus of 50% of MPG's net income .  Accordingly, we hold the circuit court did not err in denying MPG and Dr. Morphis's motion for JNOV because the evidence presented showed Hess did not have seven-days' notice of the changes in the 2015 Agreement when he received his 2015 bonus.

Further, we hold section 41-10-80(A), which states the South Carolina Department of Labor, Licensing, and Regulation can issue civil penalties or fines for notice violations, does not prevent Hess from pursuing private remedies under section 41-10-80(C).  *See* § 41-10-80(A) ("Any employer who violates the provisions of Section 41-10-30 must be given a written warning by the Director of the Department of Labor, Licensing and Regulation . . . for the first offense and must be assessed a civil penalty of not more than one hundred dollars for each subsequent offense."); § 41-10-80(C) ("In case of any failure to pay wages due to an employee as required by Section[s] 41-10-40 or 41-10-50[,] the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow. Any civil action for the recovery of wages must be commenced within three years

after the wages become due."). We hold that section 41-10-80(A) penalizes the employer for the failure to notify an employee of changes in the terms of employment, but does not prevent an employee from seeking recovery for the income loss caused by the violation under section 41-10-80(C). Accordingly, we hold the circuit court did not err in finding Hess could bring a claim under the Wage Payment Act for his 2015 bonus based on the requirement of the 2010 Agreement.

For the foregoing reasons, we affirm the circuit court's denial of MPG and Dr. Morphis's motion for JNOV.

## II.      Motion for Remittitur

MPG and Dr. Morphis argue that even if the circuit court correctly denied their motion for directed verdict, the circuit court erred by refusing to remit the verdict by the amount Hess benefited under the 2015 Agreement. They argue Hess cannot benefit from a claim that sets aside the 2015 Agreement as it applied to 2015, but retain the benefits of the 2015 Agreement for 2016 and 2017. We disagree.

We hold this argument is not preserved for appellate review because MPG and Dr. Morphis failed to include it in their answer to Hess's complaint as a counterclaim or affirmative defense and did not request remittitur based on this argument during the trial. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Additionally, we hold this argument is moot because Hess elected to pursue his remedies under the Wage Payment Act instead of taking the damages the jury awarded him, and he did not recover any remedies for 2016 and 2017 under the Wage Payment Act. *See J & W Corp. of Greenwood v. Broad Creek Marina of Hilton Head, LLC*, 441 S.C. 642, 665-66, 896 S.E.2d 328, 341 (Ct. App. 2023) ("A moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court." (quoting *Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 26, 630 S.E.2d 474, 477 (2006))). Accordingly, we affirm the trial court's denial of MPG and Dr. Morphis's motion for remittitur.

## III.   Treble Damages Award

MPG and Dr. Morphis argue the circuit court erred in awarding Hess treble damages and attorney's fees when "a bona fide dispute" existed as to his

entitlement to wages.  They contend "Dr. Morphis had a good-faith belief she was not required to pay Hess more than she did."  Morphis also argues the circuit court erred in holding "that whether Dr. Morphis had a reasonable belief must be viewed only at the time payment was denied."  They assert that "any close question of law establishes a legal dispute" and that "[t]his case had many justifiable legal defenses," such as "the statute of limitations defense, the discretionary language, the lack of clear terms in the contract, and the lack of a remedy based on the Wage Payment Act notice requirement."  MPG and Dr. Morphis assert the treble damages award must be reversed because the circuit court improperly considered the jury's award to Hess when determining whether a bona fide dispute existed.  MPG and Dr. Morphis contend the punitive damages award was contaminated by Hess's counsel specifically drawing the jury's attention to their income, which was prohibited by *Branham v. Ford Motor Co.*[5] and other cases, in violation of the circuit court's instruction.  We disagree.

Section 41-10-80(C) of the Wage Payment Act states:

> In case of any failure to pay wages due to an employee as required by Section 41-10-40 or 41-10-50 the employee may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow.  Any civil action for the recovery of wages must be commenced within three years after the wages become due.

"Section 41-10-80(C) grants the trial court the discretion to award treble damages if it finds there was no bona fide dispute the wages were owed and the withholding was unreasonable and done in bad faith."  *Morin v. Innegrity, LLC*, 424 S.C. 559, 573-74, 819 S.E.2d 131, 139 (Ct. App. 2018).  "A finding that an employee is entitled to recover unpaid wages is not equivalent to a finding that there existed no bona fide dispute as to the employee's entitlement to those wages."  *Temple v. Tec-Fab, Inc.*, 381 S.C. 597, 600, 675 S.E.2d 414, 415 (2009).

We hold the circuit court did not abuse its discretion in trebling Hess's damages because evidence supports the circuit court's finding MPG and Dr. Morphis did not have a good faith, bona fide basis for disputing the amount of bonus owed to Hess

---

[5] 390 S.C. 203, 241, 701 S.E.2d 5, 25 (2010) (holding the circuit court erred in admitting evidence of appellant's financial condition beyond net worth, such as appellant's income, revenues, and cash flow).

or to withhold his bonuses. *See Goodwyn*, 408 S.C. at 98, 757 S.E.2d at 563 ("When reviewing an award of treble damages under the Wage Payment Act, the appellate court can take its own view of the facts."); *Morin*, 424 S.C. at 573-74, 819 S.E.2d at 139 ("Section 41-10-80(C) grants the trial court the discretion to award treble damages if it finds there was no bona fide dispute the wages were owed and the withholding was unreasonable and done in bad faith."). Hess presented evidence at trial showing that Dr. Morphis purposefully withheld financial information regarding MPG's income from him, suggesting she knew MPG was not paying him the bonus set out in the 2010 Agreement. Before the May 2015 meeting, Alexander and Dr. Morphis discussed that if Hess questioned them about anything Dr. Morphis did not want him to know, Alexander would tell Hess the question involved her personal tax information and was not relevant. Hess testified that when he asked Alexander whether he received 50% of the net income, Alexander responded that the question involved Dr. Morphis's private tax information. Evidence also demonstrated Dr. Morphis and Alexander purposely failed to share the spreadsheet showing MPG's net income and doctor bonuses with Hess. Additionally, despite the 2010 Agreement stating the bonus should be decided after the company accountant determined the net income, evidence presented indicated Dr. Morphis decided Hess's bonuses without the input of the company accountant. In a December 30, 2010 email, Dr. Morphis told MPG's former accountant, Will Woodham, to make Hess's bonus $75,000 for the year. In emails sent after she forgot to give Hess his 2014 bonus, Alexander asked Dr. Morphis "How much would you like to bonus him?" to which she responded she would need to look at MPG's profits again. The foregoing evidence indicates MPG knowingly failed to abide by the 2010 Agreement in regard to Hess's bonuses. Accordingly, we hold evidence supports the circuit court's finding that no bona fide dispute or good faith reason existed for MPG and Dr. Morphis to withhold a portion of Hess's bonus payments.

Further, we reject MPG and Dr. Morphis's argument that the circuit court's award of treble damages must be reversed because it considered the jury's award when trebling the damages. *See id.* at 574, 819 S.E.2d at 139 (reversing the circuit court's trebling of damages when it based its finding that no good faith dispute existed on the jury's verdict). Although the circuit court stated the jury's verdict "weigh[ed] heavily against any argument . . . that there was a bona fide dispute about the wages due or any good faith basis for not paying the bonus money," it recognized "the general rule that it must exercise its discretion on treble damages . . . irrespective of the jury's verdict on the underlying liability" and found MPG and Dr. Morphis did not have "a good-faith, bona fide basis for disputing the amount of bonus owed" based on the evidence presented. Despite its reference to

the jury's verdict, the circuit court considered all of the foregoing evidence in ruling on this issue and thus applied the correct analysis in making its ruling. Because we hold evidence supports the circuit court's finding that no bona fide dispute about the wages due or good faith reason to withhold Hess's bonuses existed, we reject MPG and Dr. Morphis's argument that the circuit court's reference to the verdict requires reversal. For these reasons, we hold the circuit court did not abuse its discretion and we affirm its award of treble damages.

## IV.    Prejudgment Interest

MPG and Dr. Morphis argue the circuit court erred in awarding Hess prejudgment interest because his claim was not liquidated. They argued Hess's claim was not liquidated because "the jury award was not pursuant to a simple calculation that had been agreed to by the parties" and "[i]t required the assumption of a duty of good faith," which could only be ascertained by a jury. MPG and Dr. Morphis also contend Hess's claim was unliquidated because there were intermediate questions that had to be settled before the damages could be ascertained, such as whether Hess had met the "criteria" requirement in his employment agreement's bonus provision. MPG and Dr. Morphis argue the circuit court should have denied prejudgment interest when uncertainty was involved because many terms in Hess's employment agreement were unclear and undefined. We agree.

We hold the circuit court erred in awarding Hess prejudgment interest because his damages were unliquidated. *See Historic Charleston Holdings, LLC*, 381 S.C. at 435, 673 S.E.2d at 457 ("The law permits the award of prejudgment interest when a monetary obligation is a sum certain, or is capable of being reduced to certainty, accruing from the time payment may be demanded either by the agreement of the parties or the operation of law."); *id.* ("Generally, prejudgment interest may not be recovered on an unliquidated claim in the absence of agreement or statute."). The 2010 Agreement states "[a]ll end of the year profits generated by this above mentioned business shall be divided and the employee is granted 50% . . . of the said monies after all debts, expenses, royalties, and expenditures have been allowed." Although the 2010 Agreement states that Hess would receive 50% of the year's profits, it does not make certain what "debts, expenses, royalties, and expenditures" can be taken out of the profits before calculating his bonus. Thus, Hess's claims were unliquidated because the amount of his bonuses could not be reduced to a certainty. *See Dibble v. Sumter Ice & Fuel Co.*, 283 S.C. 278, 287, 322 S.E.2d 674, 679 (Ct. App. 1984) ("A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty."); *Beckmann Concrete Contractors, Inc. v. United Fire & Cas. Co.*, 360 S.C. 127, 132, 600 S.E.2d 76, 79 (Ct. App. 2004) ("In general, damages are unliquidated where they are an uncertain

quantity, depending on no fixed standard, referred to the wise discretion of a jury, and can never be made certain except by accord or verdict." (quoting 22 Am. Jur. 2d damages § 489 (2003))). Because Hess's claims were unliquidated, we reverse the circuit court's award of prejudgment interest.

**HESS'S APPEAL**

Hess argues that the circuit court erred in *sua sponte* reducing the attorney's fee award from the $450 per hour requested to $300 per hour without providing any reasoning for the reduction. Hess contends his counsel requested $450 per hour instead of his regular hourly rate of $400 because of the hybrid contingency nature of the fee arrangement and the risks in taking a case partially on a contingency basis. He argues MPG and Dr. Morphis waived any objection to the $450 per hour fee request because they did not contest the reasonableness of the fee request. We agree.

> [T]he court should consider the following six factors when determining a reasonable attorney's fee: (1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; and (6) customary legal fees for similar services. Further, on appeal, an award for attorney's fees will be affirmed so long as sufficient evidence in the record supports each factor.

*Jackson v. Speed*, 326 S.C. 289, 308, 486 S.E.2d 750, 760 (1997) (citation omitted). Our supreme court has held that "a court should consider all six factors in making its decision" and that none of the six factors are controlling. *See Horton v. Jasper Cnty. Sch. Dist.*, 423 S.C. 325, 330, 815 S.E.2d 442, 444-45 (2018).

We hold the circuit court abused its discretion in awarding Hess's counsel attorney's fees at the reduced rate of $300 per hour. We hold the circuit court did not properly consider the customary legal fees for similar services factor when awarding Hess's counsel attorney's fees at a rate of $300 per hour. *See Jackson*, 326 S.C. at 308, 486 S.E.2d at 760 (listing the factors a court should consider when determining reasonable attorney's fees, including "customary legal fees for similar services"). In Hess's counsel affidavit, counsel stated his regular rate for employment cases was $400.00 per hour, but that he "generally expected to receive more [than his] regularly hourly rate" when he took a case on a full or partial contingency basis. Hess's counsel also stated he increased his hourly rate from

$350 to $400 per hour on January 1, 2022, for employment cases and that he had received fee awards of at least $350 per hour in many cases in South Carolina in the ten years before this case. In Malissa Burnette's affidavit in support of Hess's counsel, she stated she "anticipated receiving a premium above her normal hourly rate when [she took] cases on a contingency basis because of the additional risks in taking such cases and the delay in payment." She also stated that she generally charged $475 per hour for contingency fee work and that she believed Hess's counsel's request for $450 per hour was reasonable "given his years of experience and the fees customarily charged in South Carolina for this type of legal representation." Based on this evidence, we hold the court erred in awarding Hess $300 per hour, which is less than the regular hourly rate counsel received for employment cases, when counsel and Burnette stated they generally expected to receive more than their regular hourly rate when they took a case on a contingency basis as counsel did here.

We hold the circuit court abused its discretion in awarding Hess's counsel a reduced hourly rate for attorney's fees because it had no factual or legal basis for reducing the attorney's fees. The circuit court provided no explanation and cited no evidence to support its award of $300 per hour rather than the hourly rate of $450 requested by Hess's counsel. *See Horton*, 423 S.C. at 331-32, 815 S.E.2d at 445 (finding the circuit court abused its discretion in awarding attorney's fees at a reduced hourly rate when it " provided no explanation and cited no evidence in the record to support its conclusion that [the reduction of the hourly rate] was reasonable"). Additionally, the circuit court had no basis for reducing the attorney's fee award because MPG and Dr. Morphis did not question Hess's hourly rate. During the posttrial hearing, MPG and Dr. Morphis disputed the time Hess's counsel spent on the case because he did not provide a "detailed itemized statement of fees and costs" but stated they were not disputing Hess's counsel's rate. After Hess provided his invoices, MPG and Dr. Morphis stated in an email that Hess had "appropriately substantiated his time on the case" and they had no further objections "regarding the technical requirements of his petition for fees." We hold the circuit court erred in awarding Hess attorney's fees at a rate of $300 per hour because the evidence does not support the reduced award and MPG and Dr. Morphis expressly waived any objection to the hourly rate. We reverse the circuit court's award of attorney's fees to Hess and award attorney's fees at the rate of $450 per hour, bringing the attorney's fees award to $215,475. *See Horton*, 423 S.C. at 331-32, 815 S.E.2d at 445 (holding a remand was unnecessary because no evidence in the record supported the circuit court's reduction of the hourly rate, reversing the circuit court's decision to reduce the hourly rate, and awarding attorney's fees to the appellant at the requested rate).

**CONCLUSION**

Based on the foregoing, we affirm the circuit court's orders denying MPG and Dr. Morphis's motions for JNOV and remittitur and awarding treble damages to Hess. We reverse the circuit court's award of prejudgment interest to Hess. We reverse the circuit court's decision to award Hess's attorney's fees at a reduced hourly rate, and we award Hess $215,475 in attorney's fees.

**AFFIRMED IN PART, REVERSED IN PART.**

**THOMAS and HEWITT, JJ., concur.**